[No. 2561. Decided October 5, 1897.]

CHARLES H. BAKER, *as Receiver, Appellant*, v. LUD-WIG HEIDINGER, *Respondent.*

SALE — CONDITIONAL OR ABSOLUTE.

Where a sale of sewer pipe was made to a contractor, who was engaged in putting in a ditch for a county, and payment for the pipe was only to be made by orders drawn on the county periodically, as the work progressed, according to a certain percentage of the value of the pipe laid in the ditch, the title to the pipe did not remain in the seller till paid for, since the agreement amounted to nothing more than a sale and delivery to the contractor to be by him delivered to the county and not paid for by the latter till such delivery had been completed by placing the pipe in the ditch.

Appeal from Superior Court, Pierce County.—Hon. EMMETT N. PARKER, Judge. Affirmed.

*Murray & Christian*, and *Stratton, Lewis & Gilman*, for appellant.

*John W. Blake*, and *Taylor, Dennis & Luse*, for respondent.

The opinion of the court was delivered by

GORDON, J.—This action was brought to recover the value of certain sewer pipe which it was alleged the defendant had appropriated and converted to his own use. Plaintiff is receiver of the Merchants National Bank. The

right of action sued upon was assigned to the bank on the 31st of December, 1894, by Sidney Sewer Pipe and Terra Cotta Works, a corporation. At the trial in the superior court a non-suit was directed upon the conclusion of plaintiff's evidence, and it is from a judgment entered thereon that this appeal has been taken.

It appears from the evidence that in the year 1893 the commissioners of Pierce county were engaged (whether with or without legal authority we consider immaterial to this controversy), in constructing a ditch known as the Langdon ditch, in the vicinity of the village of Sumner; that a contract for the construction of the ditch had been entered into between the commissioners of the county and one R. Schmidt; that the pipe selected by the commissioners for use in the construction of such ditch was that manufactured by said terra cotta company. As to the contract and conditions upon whch the terra cotta company forwarded the pipe, we quote from the testimony of its secretary, who was a witness upon the trial, the following:

" Q. State the circumstances under which that pipe was shipped to Sumner.

"A. It was shipped to Sumner to go into the ditch there known as the Langdon ditch.

. . . . . .

" Q. Well, how did the Sidney Sewer Pipe and Terra Cotta Works come to ship it there for that purpose?

"A. They made a contract with W. P. Wood for the price of the pipe, and it was to be let by bids, and the successful bidder was to get the pipe at the price that W. P. Wood and I agreed upon; and the cost of the pipe, when *the estimates were given*, was always to be turned over to us.

"Q. Who was W. P. Wood?

"A. He was the engineer in charge of the Langdon ditch.

" Q. Did you make an agreement with him that he was to purchase the pipe on his own behalf?

"A. No, sir, not exactly. As I said before, the success-ful bidder, as I said before, was to accept the pipe as we had agreed upon.

" Q. State what you mean by that more explicitly; state what bidder you refer to.

"A. R. Schmidt was the successful bidder for the con-tract as a whole; and, as I understand it, the sewer pipe that was required in the construction of the ditch.

" Q. Did you thereafter make a contract with the con-tractor on that work?

"A. Yes, sir.

" Q. For the sale of pipe?

"A. Yes, sir.

" Q. And what were the terms for the payment of that contract?

"A. The terms of payment—a certain amount of work, when it was given we were to get 80 per cent. of the price of the sewer pipe *that we put in;* we were to receive an order on the county commissioners, signed by W. P. Woods or the auditor, and O K'd by Schmidt.

" The Court: 'You made the contract with Smith, then?'

" Witness: ' Made the original price with W. P. Wood, and *we turned the pipe over to Smith.*'

" Q. And you made the contract for the sale of the pipe with Smith?

"A. Yes, sir.

. . . . . . .

" Q. Now, Mr. Melcher, what was the arrangement with Wood by which you consigned the pipe to him instead of to Smith?

"A. Why, he was to see that the pipe went out to the ditch, and he wished to ship it that way in order that we might be sure that we would get our estimates and that Smith would not get our money; that is the reason that we shipped the bills in the name of W. P. Wood."

On cross-examination the witness further testified:

" Q. Where was the pipe to be delivered to Mr. Smith?

"A. We never really agreed, as I understand; never— we agreed to furnish the pipe for the Langdon ditch, put them aboard the cars, we to pay the freight to Sumner from Seattle, *and he was to take it from there to the ditch*, to the ditch as he needed it.

" Q. That is, Mr. Smith was to take it from there?

"A. Yes; *and it was on the ditch that we got our estimate.*

* * * * * *

" Q. Now, when were you to receive pay for this work?

"A. When it was on the line of the ditch, and when Mr. Wood thought that he had enough work to justify him in giving an estimate, why, we were to receive it that way, *as quick as it was put in.*"

Further upon re-direct:

" Q. Won't you state clearly what the arrangement was with reference to the payment for this pipe; that is, as to how payments were to be made, and at what time and under what circumstances?

* * * * * *

"A. Well, whenever the work had progressed so that it would come up to $100 or $200, if Smith had that much coming, we got 80 per cent. of the value of our *pipe that we put in,* and then we got the estimate.

" Q. That was the arrangement according to the contract with Smith?

"A. Yes, sir."

The evidence further shows that Schmidt abandoned the work in February, 1893, and the work thereafter was done by his assigns, and the pipe mentioned in the complaint had not been paid for by any one. Respondent contends that the evidence shows that title to the pipe in question had actually passed from the terra cotta works; that the delivery to Schmidt was not a qualified delivery, and that the plaintiff failed to show a sufficient cause for the jury.

We think that the non-suit was properly granted. It seems to us plain that the pipe was shipped by the terra cotta works with the understanding and expectation that it would be placed *in the ditch* by Schmidt and that it was not to be paid for until it had been so placed. It was shipped to Sumner by rail and there Schmidt was to get it, take it to the ditch, place it therein, and from time to time thereafter, as the work progressed and estimates were given by the engineer in charge, the terra cotta company was to receive its pay from orders drawn upon the county. The agreement contemplated that the pipe should be placed in the ground before payment would be made. This amounted to something more than a qualified delivery and a reservation of the title. The pipe was sold to Schmidt to be delivered to Pierce county, and was not to be paid for until such delivery was made. Under such circumstances, the contention that the title was to remain in the seller until it was paid for cannot be sustained.

Affirmed.

Scott, C. J., and Dunbar, Reavis and Anders, JJ., concur.